UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NGOZI OGBO, IRUKA NDUBUIZU, GLADS
AZINGE, *and* JANE OGBONNA,

                Plaintiffs,

*– against –*

CSX TRANSPORTATION, INC., NORFOLK
SOUTHERN RAILWAY COMPANY, MAERSK
LINE LIMITED, MAERSK AGENCY U.S.A.,
INC., ABC TRUCKING AND LOGISTICS,
L.L.C., OFFSHORE LOGISTICS, L.L.C., JOHN
DOE #1–5, *and* ABC CORP #1–5,

                Defendants.

**OPINION & ORDER**

23-cv-10297 (ER)

RAMOS, D.J.:

      Plaintiffs Ngozi Ogbo, Iruka Ndubuizu, Glads Azinge, and Jane Ogbonna sent a shipment of two vehicles from Atlanta, Georgia, to Onne, Nigeria. The shipment did not arrive, and Plaintiffs eventually brought this action alleging breach of contract and tort damages in the Southern District of Georgia. Doc. 1. Two claims were severed and transferred to this District.[1] Doc. 46. Defendant CSX Transportation now moves to dismiss the complaint as to itself. Doc. 60. For the reasons set forth below, the motion to dismiss is GRANTED.

**I.   BACKGROUND**

    **A. The Parties**

      Plaintiffs commenced this suit after they attempted to send two vehicles, a 2006 Toyota Sienna and a 2010 Ford Escape, from Atlanta, Georgia to Onne, Nigeria. Doc. 18-2. The vehicles never arrived due to a rail accident in transport. Doc. 1 ¶¶ 18–19.

---

[1] The Plaintiffs' breach of contract and negligence claims against all Defendants except Norfolk Southern were severed and transferred to the Southern District of New York. Doc. 46 at 26. The Plaintiffs' state law negligence claim against CSX and Norfolk Southern was dismissed as the Georgia District Court declined to exercise supplemental jurisdiction. *Id.* at 28–29.

Plaintiffs originally hired ABC Trucking & Logistics, LLC to organize the transport of the cargo. *Id.* ¶¶ 15–16; *see* Doc. 61 at 2. Offshore Logistics, LLC, coordinated the sea portion of the passage on behalf of ABC Trucking. *See* Doc. 1 ¶ 16. Offshore Logistics enlisted a Danish entity, Maersk A/S, to assist in the transport. Maersk A/S's U.S. agent, Maersk Agency U.S.A., and its carrier, Maersk Line, Limited (collectively, "Maersk") coordinated the sea portion of the passage. Offshore Logistics requested a booking from Maersk Line for the sea voyage, and Maersk A/S issued a "non-negotiable waybill" (the "Waybill"). [2] *Id.*; *see* Doc. 61-1. In the same transaction, CSX was contracted to transport the vehicles from their original destination in Atlanta, Georgia to the port of departure in Savannah, Georgia. Doc. 1 ¶ 17; *see* Doc. 61 at 3.

ABC Trucking picked up the vehicles and loaded them into a Maersk container. Doc. 1 ¶ 15. ABC Trucking then delivered the container to CSX for train transport from Atlanta to Savannah. *Id.*; *see* Doc. 61 at 3. While en route, the CSX train carrying the cargo collided with a Norfolk Southern Railway Company train in Augusta, Georgia, and the cargo allegedly never arrived in Savannah. Doc. 1 ¶¶ 18–19; *see* Doc. 61 at 3. Plaintiffs allege that their cargo has not been returned and that they have not been compensated for their losses, which exceed $210,000. Doc. 1 ¶¶ 19–20.

**B. The Waybill**

CSX argues that the claims against it are precluded by the Waybill issued by Maersk to Offshore Logistics (on behalf of Plaintiffs and ABC Trucking). Doc. 61 at 6, 8. The Waybill provides that it is "subject to the terms, conditions and exceptions . . . of the current Maersk Bill of Lading." Doc. 61-1. The Maersk bill of lading contains a Himalaya Clause,[3] which extends the terms of the Waybill to subcontractors, and a

---

[2] CSX has attached the Waybill to its motion to dismiss. Doc. 61-1. The Court may consider the Waybill because it is integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[3] "A Himalaya Clause extends contractual protections that would otherwise apply only to the entity issuing the bill of lading to the subcontractors of the issuing entity as well." *Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc.*, 612 F.3d 138, 142 (2d Cir. 2010).

Covenant not to Sue, releasing subcontractors like CSX from liability if the Waybill is found to be valid and enforceable. Doc. 61 at 4–5 (citing Doc. 61-2 §§ 4.2, 4.4). Conversely, Plaintiffs argue that they are not bound by the Waybill because "they did not expressly agree to the Waybill cited in this action." Doc. 64 at 3.

  1. *Multimodal Waybill*

The Waybill in question lists "Atlanta Fairburn" as the "Place of Receipt," "Savannah" as the "Port of Loading," and "Onne" as the "Port of Discharge." Doc 61-1. As the Georgia District Court explained, when the "Place of Receipt" entry differs from the "Port of Loading" entry, the Waybill is considered a "multimodal waybill," covering all legs of travel. *Ogbo v. CSX Transp., Inc.*, No. 23 Civ. 00017 (JRH), 2023 WL 10858955, at *1 (S.D. Ga. Nov. 20, 2023); *see* Doc. 46 at 2. A multimodal waybill permits "'cargo owners [to] contract for transportation across oceans and to inland destinations in a single transaction,' as opposed to negotiating multiple separate contracts." *Ogbo*, 2023 WL 10858955, at *1 (alteration in original) (quoting *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 25–26 (2004)). CSX argues that because the Waybill is multimodal, the contract covers all legs of travel, including CSX's transportation of the cargo from Atlanta to Savannah. Doc. 61 at 3–4.

  2. *Waybill Clauses*

CSX relies on two provisions of the Waybill: the Covenant not to Sue in Section 4.2; and the Himalaya Clause in Section 4.4. Doc. 61-2 §§ 4.2, 4.4. Under Section 4.2, "no Subcontractor, agent or servant shall in any circumstances whatsoever be under any liability whatsoever to the Merchant for any loss, damage or delay of whatsoever kind[.]" Doc. 61-2 § 4.2. Similarly, Section 4.4 limits the merchant's ability to make a claim against the carrier. *Id* at § 4.4. CSX contends that as a subcontractor, it is indemnified by these clauses against claims by the Plaintiffs. Doc. 61 at 4–5.

3

### 3. The Georgia Proceedings

Plaintiff Ogbo initially filed suit in Georgia state court as the sole plaintiff. Doc. 18-4. The parties debated the validity and enforceability of the Waybill and its forum selection clause. *See* Doc. 18-5. The forum selection clause required that all disputes be brought in the Southern District of New York. *Id.* The state court found that Ogbo was bound by the Waybill and that the proper forum was the Southern District of New York. *Id.* Unable to transfer the case to this District itself, the state court dismissed the case. *Id.*

Ogbo, joined by Ndubuizu, Azinge, and Ogbonna, then filed suit in federal court in the Southern District of Georgia, alleging breach of contract, negligence for failure to handle the cargo with due care, and negligence for failing to exercise ordinary care to avoid a collision. Doc. 1 ¶ 21. The Georgia district court found that Plaintiffs were bound by the Waybill based on their own submissions, explaining: "Plaintiffs seem to concede they are parties to the Waybill." *Ogbo*, 2023 WL 10858955, at *7. Additionally, the court held that "by filing a lawsuit for damages under the [Waybill], [Plaintiffs] ha[ve] accepted the terms of the [Waybill], including the unnegotiated forum selection clause." *Id.* (alterations in original) (quoting *Danmar Lines, Ltd. v. CMA CGS S.A.*, No. 9 Civ. 22857 (AJJ), 2010 WL 5174975, at *2 (S.D. Fla. June 16, 2010)). The court then concluded that the forum selection clause in the contract was valid and enforceable. *Id.* at *7–8. As a result, the court transferred two claims to this District—breach of contract and negligence against all defendants other than Norfolk Southern. *Id.* at *8–10. The court declined to transfer the third claim—a negligence claim for failure to exercise ordinary care to avoid a collision—against CSX and Norfolk Southern as it did not relate to the Waybill. *Id.* at 9.[4]

---

[4] The Georgia district court determined that subject matter jurisdiction was proper under the court's maritime jurisdiction because "the Waybill's primary purpose was to ship the Cargo by sea[.]" *Ogbo*, 2023 WL 10858955, at *5.

4

### C. Procedural History

The case was transferred in from Georgia on November 22, 2023.  Doc. 47.  On June 27, 2024, CSX moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Doc. 60.

## II.     LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The purpose of Rule 12(b)(6) "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits."  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).  To state a plausible claim, the plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556).  If the plaintiff has not "nudged [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

5

### III. DISCUSSION

Before the Court is CSX's motion to dismiss Plaintiffs' claims for breach of contract and for negligence for failing to handle the cargo with care. Doc. 1 ¶ 21. CSX first argues that the negligence claim is duplicative and should be dismissed because it is "based on a carrier's breaches of duties that arise solely out of their contract." Doc. 61 at 10. CSX also contends that the entire suit is precluded because the Himalaya Clause and Covenant not to Sue in the Waybill limit its liability. *Id.* at 11. CSX argues that the Waybill includes an unambiguous commitment not to sue subcontractors and that as a subcontractor, CSX is a beneficiary of that liability limitation. *Id.* at 14.

As a preliminary matter, the Georgia district court concluded that Plaintiffs were bound by the Waybill because they conceded in their briefing that they were parties, and they brought a breach of contract claim under the Waybill. *Ogbo*, 2023 WL 10858955, at *7. As the Georgia court observed, Plaintiffs conceded their status as parties to the Waybill when in defending themselves against the claim that the Waybill "was a contract between sophisticated entities," they argued that they were not "sophisticated entities" instead of denying their status as parties altogether. *Id*. The Georgia court also held that in bringing this suit, Plaintiffs had accepted the terms of the Waybill. *Id*. These determinations by the Georgia District Court are the law of the case. Accordingly, the Georgia District Court's finding that the Plaintiffs were bound by the Waybill, and the decision to transfer the case will be upheld.

> Under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." . . . "Indeed, the policies supporting the doctrine apply with even greater force to transfer decisions than to decisions of substantive law" . . . . Although the doctrine does not restrict a court's authority to revisit a previously decided issue, "courts should be loathe to do so in the absence of extraordinary circumstances, such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'"

*Washington Nat. Life Ins. Co. of New York v. Morgan Stanley & Co. Inc.*, 974 F. Supp. 214, 218 (S.D.N.Y. 1997) (citations omitted).

In any event, the Court agrees with the Georgia District Court. Plaintiffs here have brought a breach of contract claim that relies on the Waybill, thereby conceding that they are bound by the terms of the contract. *See Ana Distribution, Inc. v. CMA-CGM (Am.) Inc.*, 329 F. Supp. 2d 565, 567 (S.D.N.Y. 2004) (where recipient of shipment sued the vendor's carrier based on contract between vendor and carrier, court held that recipient was "bound by all the terms of the contract on which it sues"); *see also A.P. Moller-Maersk A/S v. Comercializadora de Calidad S.A.*, 429 F. App'x 25, 29 (2d Cir. 2011) ("Quality Print adopted the booking confirmation by bringing suit on it, thereby binding itself to the bill of lading incorporated by reference, including the forum selection clause.").

The Waybill precludes this suit against CSX based on Sections 4.2 and 4.4, which extend liability limitations to subcontractors. Doc. 61-2 §§ 4.2, 4.4. Plaintiffs here do not contest that CSX meets the definition of subcontractor under the Waybill, as CSX was the "rail operator contracted to carry the Cargo to the port in Savannah." Doc. 61 at 4; *see* Doc. 61-2 § 1. As CSX meets this definition, it is covered under the liability-limiting sections of the Waybill.

In their response to CSX's motion to dismiss, Plaintiffs reiterate their belief that the forum selection clause is unreasonable and argue that Georgia is the proper forum. Doc. 64 at 3–4. They also challenge the liability limitations in the Waybill. *Id*. at 3. CSX relies on *Kirby*, though that case was decided at the summary judgment stage. *Kirby*, 543 U.S. at 21–22. In *Kirby*, a manufacturing company sued Norfolk Southern after a train derailment damaged cargo that the company was shipping to a purchaser. *Id.* at 18. Norfolk Southern relied on liability limitations from contracts negotiated by upstream intermediaries—carriers who contracted with other carriers rather than with the cargo owner themselves. *Id.* The court concluded that Norfolk's liability was limited by the upstream contract. *Id.* at 36. In this case, Maersk was acting as an agent of Plaintiffs, who were aware that more than one subcontractor would have to be hired. Intermediaries

7

like Maersk are permitted to contract with carriers like CSX on behalf of cargo owners, so Maersk's Waybill covers CSX:

> When an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed. The intermediary is certainly not automatically empowered to be the cargo owner's agent in every sense. That would be unsustainable. But when it comes to liability limitations for negligence resulting in damage, an intermediary can negotiate reliable and enforceable agreements with the carriers it engages.

*Id.* at 33. Plaintiffs knew that to transport their cargo from Atlanta, Georgia to Nigeria, the cargo would have to travel by land and sea using multiple different carriers. Therefore, they consented to subcontractors handling their cargo, subjecting them to the Waybill.

Consistent with *Kirby*, CSX is also protected by the Waybill because of the potential policy implications that would arise if this suit against them was permitted. The Supreme Court explained that subcontractors and downstream carriers, those enlisted by other carriers, must be able to rely on the liability limitation in their agreements with the party that retained their services. *See id.* at 33 (citing *Great Northern Railway Co. v. O'Connor*, 232 U.S. 508 (1914)). It would be irrational to assume that each carrier was aware of the transfer company's arrangements with any other party. *Id.* Parties like CSX would have to conduct their own costly inquiries into which contractual liability limitations covered them. *Id.* at 35. Alternatively, if liability limitations in contracts were generally unenforceable, carriers and subcontractors would begin to internalize these costs, thus increasing costs to intermediaries and eventually cargo owners. *See id.*

Ultimately, Plaintiffs have not provided any basis for the Court to allow their negligence and breach of contract claims to proceed.

### IV. CONCLUSION

For the foregoing reasons, CSX's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate CSX as a defendant, and to terminate the motion, Doc. 60.

It is SO ORDERED.

Dated: November 15, 2024
       New York, New York

                                         EDGARDO RAMOS, U.S.D.J.